Birchard, C. J.
It is necessary in order to test the correct- ’ ness of the judgment which we are asked to reverse, to examine the actual state of the facts presented by the bill of exceptions. The bill shows that the following evidence was before the jury, at the time the President Judge of the Common Pleas was called upon to instruct them on matter of law: 1. An appeal bond in form identical with the one declared upon. 2. That the appeal had been prosecuted to effect, and judgment recov ered by the appellee, and the issuing of an execution against appellant and a return of nulla bona thereon.
The only litigated fact in the way of a recovery by Fenimore, concerned the validity of the bond itself. Upon that point the proof was all introduced by the obligee named in the bond. The obligors offered no evidence.
The subscribing witness proved the signature of Tiernan and that the bond was signed and acknowledged by Watson and Tiernan as their act and deed, that the plaintiff was present and objected to the sufficiency of Tiernan as surety. That the name of Clark was not then in the bond, but that the bond was in his, witness’, handwriting, that Clark’s name was written and stricken out, and Blake’s name inserted by him, but at what time he could not state. Turner, the Clerk of the Court of Common Pleas, says, that he witnessed the signature of Blake, that the bond in the identical form that it now is, was presented to him, and by him received, approved and filed as an appeal bond, December, 22, 1837. That when first presented he required other security on account of the supposed insufficiency of Tiernan.
The plaintiff below also offered the certified copy of a mortgage deed from Watson and wife to Tiernan and Blake, dated May, 15, 1841, conditioned to secure the payment of the judgment against Watson, and also to save harmless and indemnify the said Tiernan and Blake of and from all damages and costs, by reason of their having become thé security of the said John Watson, upon the appeal of the said suit from the Scioto Common Pleas to the Supreme Court. Turner being again called, *551 testified that after the rendition of the judgment in the Supreme Court, in a conversation he had with Tiernan, he stated to the witness that he expected the securities of the said John would have to pay the amount of said judgment, that he wished witness not to urge the bringing of a suit upon the appeal bond, that he, Tiernan, was making arrangement with Watson and the matter would be settled without any further expense, as he was now satisfied the securities would have to pay it.
Upon this state of the evidence, under the charge of the Court, the jury found a verdict for the defendants, and the Court, when requested, refused to grant a new trial. Did the Court err? The paramount object of all Courts is to render exact justice, as between the parties litigant. This should be effected in all cases without any departure in the application of principles from established law, for any such departure renders the law uncertain, and whatever tends to such uncertainty, tends also to render every man’s rights unsafe. Upon these facts, in evidence, it appears to us there was no reason why the plainliff below should not have had a verdict and judgment for the amount due in equity upon the appeal bond. Tiernan first offered to become sole security for the appeal, was present when the Clerk of the Court refused to receive him without an additional security; stood by in silence and allowed the bond to be taken away for the purpose of procuring an additional security, who would be satisfactory to the Clerk. After that security was obtained and the appeal perfected according to his original intention, we next find him looking to his own indemnity, by taking a mortgage, reciting that he and Blake were securities on this very obligation. And finally he intercedes with the Clerk for delay, on the ground that he and his co-security must eventually pay the judgment.
A verdict returned in the face of such evidence in our opinion ought not to stand. And because the Court of Common Pleas refused to set it aside and grant a new trial, their judgment was rightly reversed.
*552 But it is said that the Court acted upon erroneous views and gave wr0DS reasons upon the circuit for the reversal of that judgment. That may or may not have been the case. I know not how that fact is. The judges who held the Court upon the circuit recollect that their views of the case were then in accordance with our present views, yet the Clerk of the Court in certifying under the statute, the causes of reversal, has stated the finding to be that there was error as alleged in the first two assignments of error, omitting the third.
The entry in this particular is probably an oversight either of the clerk or counsel in making up the journal. And it is not improbable that remarks may have fallen from the judge delivering the opinion which contributed thereto. The instructions given to the jury by the Court of Common Pleas were a proper subject of comment, when viewed in connection with the facts of the case. Take for instance the first instruction, “ That an alteration or erasure of a bond in a material part after execution, by any of the obligors would render the bond void as to him unless such alteration or erasure was made in the presence and with the assent of the obligor sought to be charged, or he has given a subsequent assent amounting to a re-delivery of the bond. As an abstract proposition this may be good law. Still if rightly understood it was not a principle applicable to the facts. It would have been as well to omit giving it, and wrong to give it as a principle that might control their verdict. If the Court intended the jury should receive it as strictly applicable to the facts in evidence, the Court did not half perform its duty, for in that aspect it would tend to mislead nine persons out of ten. The phrase “after execution by any of the obligors ” in common parlance means after the signing of the bond. A jury under this charge would naturally so infer. In a legal sense the word execution implies signing, sealing and delivering. It is the delivery which completes the execution and gives validity to a deed.
Now the proof showed that there was no delivery before the insertion of Blake’s name. Delivery had been tendered in *553 Tiernan’s presence, and the clerk refused to accept it and required further security. If this was the fact, (and that jury would have so found if they had been made fully to prehend the law of the case, there can scarce be a doubt,) then the Court should have told them that, if the bond was thus taken from the clerk’s office in order that Blake’s or some other person’s name might be inserted, who would be satisfactory to the clerk, and Tiernan stood by, and by silence expressed his assent, it was a matter of no moment whether he was present or not when the insertion of Blake’s name was made. That in law he should be deemed to have authorized the insertion of the name and the subsequent delivery of the bond to the clerk. When this abstract proposition was presented to the Court, and claimed to be the legal proposition upon which the merits of the defence turned, it would have been proper, and we think the Court should have called the attention of the jury to the evidence, and submitted to them to find whether the recitals of the mortgage deed the conversations proven by Turner, connected with his conduct when the bond was first offered and rejected, did not show that the bond as finally filled up, was delivered with Tiernan’s assent, and if so that they should find for the plaintiff.
The second, third and fourth propositions given in charge to the jury, are such that what has been said in reference to the first, is applicable to them. They are abstract propositions, artfully worded, and although they may be, in a legal sense, very good law, when understood and applied by legal minds to a state of facts to which they would be applicable, yet therewas very little in the proof to call for the instructions, and being given as propositions governing their finding without such explanations as would show the jury how little bearing they had upop the true merits of the defence, sufficiently accounts to us for an erroneous verdict.

Judgment affirmed.